IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANICE M. CARLSON,<br><br>  Plaintiff,<br><br>v.<br><br>TENET SOUTH FULTON, INC.<br>AND SOUTH FULTON MEDICAL<br>CENTER, L.LC.,<br><br>  Defendants. | CIVIL ACTION NO.<br><br>_____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Janice M. Carlson, by and through her undersigned counsel, brings this action against Defendants Tenet South Fulton, Inc. and South Fulton Medical Center, L.L.C.

**NATURE OF THE ACTION**

1.  Plaintiff Janice M. Carlson ("Carlson") brings this action under the Fair Labor Standards Act ("FLSA") of 1938, as amended, 29 U.S.C. § 201 et seq., alleging that Defendants Tenet South Fulton, Inc. ("Tenet") and South Fulton Medical Center, L.L.C. ("Medical Center")(collectively "Defendants") willfully

1

failed to compensate Carlson at time and one-half for all hours worked in excess of forty (40) hours per week.

2. Because Defendants violated the FLSA, they are liable to Carlson for all unpaid overtime wages, an equal amount of liquidated damages, and reasonable costs and attorneys' fees.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over Carlson's claims pursuant to 28 U.S.C. § 1331.

4. Venue is proper under 28 U.S.C § 1391(b) and Local Rule 3.1(B)(3) in the Atlanta Division of the Northern District of Georgia because (1) a substantial part of the events and omissions giving rise to the claim occurred within this District and Division and (2) Defendants resides and transacts business in this District and Division.

5. Carlson is a former, hourly "employee" of Defendants.

6. An advanced academic degree was not a prerequisite for Carlson's occupation.

7. Both Defendant Tenet and Medical Center were employers under 29 U.S.C. § 203(d) as both acted directly and indirectly in the interest of Defendants

in their interactions with Carlson, and controlled the terms and conditions of her employment.

8. Defendants employed Carlson who handled and otherwise worked on goods and/or materials that had been moved in or produced for commerce.

9. On information and belief, and at all times relevant, Defendants have had an annual gross volume of sales made or business done in excess of $500,000.00.

## PARTIES

10. Plaintiff Janice M. Carlson is a citizen of Georgia who resides in DeKalb County.

11. Defendant Tenet is a domestic corporation with its principle office address located at 1445 Ross Ave, Suite 1400, Dallas, Texas 75202.

12. Defendant Medical Center is a domestic limited liability company with its principle office address located at 777 Cleveland Avenue, Suite 406, Atlanta, Georgia 30331.

13. Defendant Tenet may be served with process by delivering a copy of the Complaint and Summons to its registered agent, CT Corporation, at 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

14. Defendant Medical Center may be served with process by delivering a copy of the Complaint and Summons to its registered agent, Jamal Bahhur, at 777 Cleveland Avenue, Atlanta, Georgia 30331.

## FACTUAL ALLEGATIONS

15. Carlson was employed by Defendants from September 2008 through June 15, 2012, as a registered nurse.

16. Carlson performed non-exempt work.

17. Defendant Tenet is a health care provider that operates hospitals and outpatient centers throughout the United States, including California, New Mexico, Alabama, Florida, and Georgia.

18. Accordingly to Tenet's online website, it operates in Georgia five hospitals and five outpatient centers.

19. Defendant Medical Center is a Level-1 trauma center that provides 24-hour emergency services, in addition to intensive care, neurology, nuclear medicine, and gastroenterology health care services.

20. Tenet operates Medical Center.

21. Throughout her employment, Carlson was assigned to perform work in Defendants' Interventional Radiology Department. There she assessed

patient status, interpreted information, and worked with physicians to facilitate quality services.

22. In addition to performing work in the radiology department, Carlson was directed to interact with, and responsible for, patients and physicians in Defendants' four other areas of radiology: nuclear medicine, ultrasound imaging, CT scans, and magnetic resonance imaging (MRI).

23. Excluding Carlson, and all times relevant, only one other full-time registered nurse was employed by Defendants in their Interventional Radiology Department.

24. From September 2008 to March 2012, Carlson was compensated at an hourly rate of $33.82.

25. In April 2012, Carlson's hourly rate rose to $34.84.

26. Generally, Plaintiff was scheduled to work Monday through Friday a shift that began at 7:30 a.m. and concluded at 4:00 p.m., with a 30-minute lunch break.

27. Coupled with her regular shift, Carlson was designated on-call two to three days per workweek, which meant on those days she worked a 24-hour shift beginning at 7:30 a.m.

### I.  **<u>Automatic-Lunchtime Deduction.</u>**

28. At all times relevant, Defendants utilized a timekeeping system that deducted from employee wages a 30-minute lunch period, regardless of whether a lunch break was actually taken by an employee.

29. As a consequence of Defendants' automatic-lunchtime deduction policy, they deducted 30-minute lunch breaks from Carlson's wages even though she rarely, if ever, actually took a lunch break.

30. At all relevant times, Carlson routinely ate lunch at Defendants' cafeteria, giving physicians, patients, and other nurses access to her and her services.

31. Upon information and belief, Carlson's supervisors and coworkers routinely required her to perform work during her 30-minute lunch break.

32. At all times relevant, Defendants' required Carlson to carry a SpectraLink wireless phone throughout her workday.

33. Carlson's SpectraLink wireless phone was issued by Defendants to Carlson, and allowed Defendants to contact Carlson at any time, regardless of her location at work.

34. Defendants on a routine basis interrupted Carlson via her SpectraLink wireless phone, demanding that she stop eating, return to work, and immediately assist patients and/or physicians.

35. By virtue of Defendants' understaffing and the time-sensitive needs of their patients, Carlson was required to work through the majority of her lunch breaks.

36. At all times relevant, Carlson rarely, if ever, was given an uninterrupted 30-minute meal period.

37. Carlson was rarely, if ever, completely relieved from duty for the purposes of eating regular meals.

38. This real limitation on Carlson's personal freedom inured to Defendants' benefit.

39. Defendants knew and had reason to believe Carlson continued to work during her lunch breaks and that the time was work-time.

40. Throughout Carlson's employment, Defendants discouraged her from utilizing Defendants' timekeeping system to report whether a meal period was or was not taken.

41. Upon information and belief, Defendants created an environment that discouraged her from reporting any hours or part hours worked during lunch.

42. For example, in response to Carlson reflecting on Defendants' timekeeping system a "no lunch", payroll clerk Rosalyn Daniels chastised her, exclaiming: Why did you punch no lunch?

43. By way of further example, in response to Carlson reflecting on Defendants' timekeeping system a "no lunch", payroll clerk Rosalyn Daniels stated: If you miss a lunch, don't punch no lunch.

44. Upon information and belief, Carlson's supervisors and other colleagues at various times made statements evidencing their knowledge that she was indeed working while eating.

45. Defendants' deduction policy resulted in lost overtime to the extent that the operation of the policy deprived Carlson of credit for hours worked in excess of forty (40) hours per week.

## II. Practice Of Mandating Carlson And Others Similarly Situated Perform 30-Minutes Of Uncompensated Work.

46. At all times relevant, Defendants had a plan and policy requiring Carlson and others similarly situated to clock out each on-call shift at 4:00 p.m. and then clock in at 4:30 p.m.

47. Between the 4:00 p.m. – 4:30 p.m. period, Carlson continued to perform her regular duties, including: assessing patient status and interpreting information.

48. Carlson clocked out at 4:00 p.m. each on-call shift because payroll clerk Rosalyn Daniels and Director of Radiology Services Anthony Davis' required her and others to do so, despite continuing to work.

49. Defendants were aware that Carlson and others similarly situated were working time for which they were not being compensated.

50. Upon information and belief, the mandate that Carlson – and others similarly situated – perform 30-minutes of uncompensated work was a cost saving measure.

51. Defendants knew or should have known that their plan and policy of having Carlson – and others similarly situated – perform 30-minutes of uncompensated work violated the FLSA.

52. Defendants' policy resulted in lost overtime to the extent that the operation of the policy deprived Carlson of credit for hours worked in excess of forty (40) hours per week.

## WILLFUL FAILURE TO PAY OVERTIME

53. Paragraphs 1 through 52 are incorporated here by this reference.

54. As a consequence of Defendants' lunchtime deduction policy, they failed to compensate Carlson at time and one-half for all hours worked.

55. As a consequence of Defendants' policy requiring Carlson to perform 30-minutes of uncompensated work, Defendants failed to compensate her at time and one-half for all hours worked.

56. Defendants' policies violated the FLSA.

57. Carlson regularly worked in excess of forty (40) hours per week while employed with Defendants.

58. Defendants are liable to Carlson for any and all time worked in excess of forty (40) hours per week.

59. Defendants knew or should have known that the FLSA applied to Carlson.

60. Defendants failed to compensate Carlson for all time worked.

61. Defendants' violations of the FLSA overtime provision, 29 U.S.C. § 207(a), were willful because Defendants: (1) failed to maintain accurate time records; (2) failed to compensate Carlson for all time worked during her scheduled lunch period; (3) led her to believe that Defendants' lunchtime deduction policy conformed with the FLSA and the laws of the State of Georgia; and (4) discouraged Carlson from reporting time worked in excess of forty (40) hours.

62. Pursuant to 29 U.S.C. §§ 216(b) and 255(a), Defendants are liable to Carlson for three years of unpaid overtime wages, an equal amount as liquidated damages, and reasonable attorneys' fees.

63. Carlson seeks damages in the amount of her unpaid overtime wages, liquidated damages as provided under the FLSA, and any other legal and equitable relief the Court deems proper.

64. Carlson seeks recovery of attorneys' fees and costs to be paid by Defendant as provided by the FLSA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Carlson respectfully prays that:

a. the Court enter judgment in favor of Plaintiff;

b. the Court enter judgment against Defendants that their violations of the FLSA were willful;

c. the Court award Plaintiff all unpaid overtime wages as provided for under the FLSA;

d. the Court award Plaintiff liquidated damages in an amount equal to the amount of his unpaid overtime wages, as provided for under the FLSA;

e. the Court award Carlson her attorneys' fees and costs of litigation under 29 U.S.C. § 216(b);

f. the Court determine all triable issues at trial; and

g. the Court award all other relief as the Court deems just and proper, included any and all equitable relief.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Carlson demands a jury trial on all issues triable by a jury.

**RESPECTFULLY SUBMITTED**:     March 25, 2013

| | |
|---|---|
| **MAYS & KERR LLC** | /s/ Viraj Parmar |
| 229 Peachtree Street NW | Viraj Parmar |
| International Tower \| Suite 980 | Ga. Bar No. 996884 |
| Atlanta, GA 30303 | viraj@maysandkerr.com |
| Telephone:   (404) 410-7998 | |
| Facsimile:    (877) 813-1845 | Jeff Kerr |
| | Ga. Bar No. 634260 |
| Counsel to Carlson | jeff@maysandkerr.com |

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, counsel hereby certify that this Complaint and Demand for Jury Trial has been prepared using Book Antiqua 13 point font, as approved by Local Rule 5.1C.

This 25th day of March, 2013

/s/ Viraj Parmar
Viraj Parmar
Ga. Bar No. 996884
